IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY J. KELLY,          Plaintiff, | : : : | CIVIL ACTION |
| v. | : : | No. 14-cv-4317 |
| OFFICER DEMOSS JONES et al.,          Defendants. | : : : | |

MCHUGH, J.                                                                                                              APRIL 17, 2015

## MEMORANDUM

This is a civil rights action brought by Plaintiff Anthony Kelly, who wrongfully spent five weeks in jail following his arrest pursuant to an aged warrant, because the officer who requested its issuance allegedly refused to investigate an airtight alibi—that he was incarcerated when the crime for which he was arrested occurred. The warrant in question was more than five years old, contained no physical description, and specified a nickname for the suspect which Plaintiff had in fact never used. On these alleged facts, where the alibi asserted would have been completely exculpatory and could have been objectively verified through an official source, I am persuaded that Plaintiff has stated a viable claim for malicious prosecution.

  I.      **Factual Background**

Plaintiff asserts claims for False Arrest, False Imprisonment, Malicious Prosecution, and Failure to Investigate under both 42 U.S.C. § 1983 and Pennsylvania state law against Defendant-Officers John Gretsky, S. Gretsky, and Demoss Jones, arising out of his arrest in 2012. Additionally, Kelly brings a state law claim for Intentional Infliction of Emotional Distress against the three officers, and a § 1983 Monell claim against the City of Chester. Plaintiff was arrested outside of his place of employment on June 6, 2012. The arrest was made

1

pursuant to a warrant for an alleged assault and robbery, issued upon an Affidavit of Probable Cause sworn to by Officer Demoss Jones on October 23, 2006.  That affidavit did not contain a physical description of the suspect, but merely listed the suspect's name, Anthony Kelly, and his alias, "Izzy."  Officers John Gretsky and S. Gretsky stopped Plaintiff, and upon hearing that the man they had stopped was named Anthony Kelly, made no attempt to determine whether he also had the nickname "Izzy."  The Officers Gretsky executed the warrant and took Plaintiff into custody.  Officer Jones, who was not among the arresting officers, was informed of the arrest immediately after the warrant was executed.

     Plaintiff told the Officers that it was impossible for him to have committed the crimes listed in the warrant because he was incarcerated during the period in 2006 when the crimes were alleged to have occurred.   Plaintiff alleges that at no time did any of the officers investigate his claim that he was incarcerated at the time of the crimes and could not have committed them; no officers attempted to contact the initial victim to confirm Plaintiff's identity; no officers attempted to verify his identity as "Izzy"; and that the officers had a mugshot of the actual "Izzy" in their possession but ignored that picture.

     Plaintiff spent more than a month in county jail as a result of the arrest, with bail set at $20,000.  On July 18, 2012, charges against Plaintiff were dismissed with prejudice by Judge Spencer Seaton, Jr., of the Chester Magisterial Court.  Plaintiff has pleaded false  arrest and imprisonment, but concedes that the statute of limitations for those claims has expired.  Accordingly, the sole remaining theory of liability is malicious prosecution, based upon his continued detention after arrest.

## II.     Malicious Prosecution and Failure to Investigate

Plaintiff asserts malicious prosecution claims against all three officers under both § 1983 and under Pennsylvania common law.  Under § 1983, malicious prosecution claims require a showing that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.  Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009).  Pennsylvania common law similarly requires that "[t]he defendant must have instituted proceedings against the plaintiff 1) without probable cause, 2) with malice, and 3) the proceedings must have terminated in favor of the plaintiff."  Kelley v. Gen. Teamsters, Chauffeurs & Helpers, Local Union 249, 518 Pa. 517, 520-21, 544 A.2d 940, 941 (1988).

Kelly also asserts claims for "failure to investigate."  Although some decisions discuss such a theory in connection with claims for malicious prosecution, I share the concern of my colleague Judge Goldberg that the "contours of a stand-alone claim for failure to investigate are not well-defined within this Circuit."  Briscoe v. Jackson, 2 F. Supp. 3d 635, 645 n.5 (E.D. Pa. 2014).  As a result, I will not consider such failure to give rise to a separate claim, but rather consider the officers' lack of investigation only as it pertains to the elements of a claim for malicious prosecution.

Under both the federal and state standards, Defendants must have initiated the criminal proceedings without probable cause.  Therefore, if probable cause existed to initiate the proceedings against Kelly, the malicious prosecutions claims must be dismissed.  "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge

3

are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995).  While "'the question of probable cause in a section 1983 damage suit is one for the jury,' a district court may conclude 'that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding.'" Estate of Smith v. Marasco, 318 F.3d 497, 514 (3d Cir. 2003) (quoting Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998)).

Because the officers involved played different roles, I evaluate Plaintiff's claims separately.

### A. *Claims Against Gretsky Defendants*

Officers John Gretsky and S. Gretsky are not alleged to have played any prior role in the investigation or the issuance of the arrest warrant.  Technically speaking, they did not, in the first instance, "initiate" a criminal proceeding.  I have some questions as to the validity of the claim against them on that basis alone.  One could, however, consider their arrest of Plaintiff to constitute initiation of proceedings, and for purposes of discussion I will assume that bringing Kelly into custody would suffice to meet the first element of a malicious prosecution claim.  The analysis then shifts to whether they acted with probable cause.

To determine whether probable cause existed as to the arresting officers, the focus of the inquiry is on the arrest itself.  Plaintiff concedes that Officers John and S. Gretsky stopped and arrested him based on an outstanding arrest warrant matching his name.  "It is well-settled that probable cause to arrest generally exists when a police officer makes an arrest pursuant to a warrant which meets the requirements of the Fourth Amendment." Kis v. Cnty. of Schuylkill, 866 F. Supp. 1462, 1469 (E.D. Pa. 1994) (citing Baker v. McCollan, 443 U.S. 137, 144 (1979)).

"Law enforcement officers who arrest solely on the basis of such a warrant are immune from suits alleging a Constitutional violation." Id.  Plaintiff asserts a single defect in the warrant—that it contained only a name with no physical description of the person to be arrested.  However,

> [t]he requirements for the execution of a valid arrest warrant are clear. The arrest warrant must contain "the name of the defendant or, if his name is unknown, any name or description by which he can be described with reasonable certainty." Fed. R. Crim. P. 4(c)(1). Only in this way can an arrest warrant meet the particularity requirements of the Fourth Amendment. Courts have long held that "John Doe" warrants are insufficiently particular to meet this standard. United States v. Doe, 703 F.2d 745, 747 (3d Cir. 1983).  Beyond that, however, a warrant that correctly names the person to be arrested generally satisfies the requirements of the Fourth Amendment and no other description of the arrestee is usually necessary in the warrant.

Kis v. Cnty. of Schuylkill, 866 F. Supp. 1462, 1469-70 (E.D. Pa. 1994) (citing Powe v. City of Chicago, 664 F.2d 639, 645 (7th Cir. 1981)); see also Wanger v. Bonner, 621 F.2d 675, 682 (5th Cir. 1980) ("the inclusion of the name of the person to be arrested on the arrest warrant constitutes a sufficient description to satisfy the Fourth Amendment requirement that the person to be seized be described with particularity.").  As such, no physical description of a defendant need be included where the name of the defendant is known to those seeking the warrant.

It is true that "an arrest warrant that incorrectly names the person to be arrested will usually be deemed insufficient to meet the Fourth Amendment's particularity requirement unless it includes some other description of the intended arrestee that is sufficient to identify him." Powe, 664 F.2d at 645.  Here, however, the warrant contained Plantiff's name.  Although in reality Plaintiff was not the correct Anthony Kelly or "Izzy", that does not negate the fact that Plaintiff's exact name was specified in the warrant.  The Gretskys merely executed the warrant, and the only defect asserted—the absence of a physical description of the person to be arrested—is not a legal defect where the suspect's name is set forth. Therefore, there are no facts pleaded

which, when accepted as true, support the conclusion that the Gretskys lacked probable cause to arrest Plaintiff in executing the warrant.

The question then becomes whether the Gretskys, who acted here solely as arresting officers, had a further duty to investigate the strength of the case.  In situations where an officer's involvement is limited to executing a facially valid warrant, the Supreme Court has held that liability should ordinarily not attach:  "Given the requirements that an arrest be made only on probable cause and that one detained be accorded a speedy trial, a sheriff executing a valid arrest warrant is not required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent."  Baker v. McCollan, 443 U.S. 137, 138 (1979); accord Eckman v. Lancaster City, 742 F. Supp. 2d 638, 653 (E.D. Pa. 2010) ("Once a police officer has established probable cause, the Constitution does not require that he continue to investigate to uncover potentially exculpatory evidence.").

Like the sheriff in Baker v. McCollan, the Gretskys acted on the basis of a facially valid warrant issued in reliance on the sworn allegations of another law enforcement officer.  In the ordinary course of events they would not have a duty to inquire further, as "the Constitution does not guarantee that only the guilty will be arrested."  443 U.S. at 145.  The Baker rule would apply with particular force here in that the officer who sought the arrest of "Anthony Kelly" was a member of the same police department, still on active duty when the warrant was executed.  It was Officer Jones' affidavit of probable cause that led to Plaintiff's arrest, and he was advised a suspect was in custody.  On these facts,  I conclude that the Gretsky Defendants are entitled  to dismissal of the claims against them.

B. Claim Against Officer Jones

The claim against Jones stem from alleged reckless conduct in seeking the warrant in 2006, and his refusal to investigate and confirm Kelly's claim that he could not have been the suspect named in the warrant because of his previous incarceration.    There are meaningful differences in the role played by an officer who merely effectuates an arrest as compared to an officer responsible for pressing charges.  Although the conduct of the arresting officer results in a suspect being taken **into** custody, whether the suspect continues to be **held** stems from the decisions of the prosecuting officer, in this case Officer Jones.  The defense contends the principle recognized by the Supreme Court in Baker, that an arresting officer has no duty to investigate, should also extend, without exception, to the prosecuting officer whose affidavit formed the basis for the arrest, and that it should extend indefinitely, regardless of how long a suspect is detained.  This ignores the fact that once a suspect has been detained, law enforcement has additional time and resources to determine whether that suspect was in fact the individual involved in the crime.  Ironically, and of significance here, the plaintiff in Baker was released three days later, after being remanded into the custody of the county which had issued the warrant, which then checked the file photo of the wanted man and acknowledged it was a case of mistaken identity.  443 U.S. at 141.  These are the very steps Kelly asserts should have been taken in his case.  He was already in the custody of the issuing jurisdiction, and he requested a comparison with the mug shot of the suspect on file, as well as a check of his record of incarceration.  Such a review would have negated any finding of probable cause.

For practical purposes, the question is how far to extend the protections of Baker.   To state the matter differently:  if the obligation of the arresting officers was to make certain they

were seizing *an* Anthony Kelly, did the prosecuting officer have an obligation to consider whether they had arrested *the* Anthony Kelly against whom he had alleged a finding of probable cause?  On the record here, I conclude that further inquiry was required.

The warrant in question was more than five years old.  Neither Plaintiff's first name nor last name was exotic or unusual, making it entirely probable that there could be more than one "Anthony Kelly" within the jurisdiction.  Although there is no requirement that a warrant include a physical description, the absence of such a description, particularly when coupled with relatively common names, creates a wider possibility of error.  The suspect being sought had a particular nickname, about which Plaintiff was not asked.  In Walker v. Spiller, No. 97-6720, 1998 WL 306540 (E.D. Pa. June 9, 1998), in allowing a similar claim to proceed, my colleague Judge Brody held that an officer's duty to investigate an alibi such as incarceration "must be weighed in the context of the strength or weakness of the probable cause evidence." Id. at *6. The combination of factors set forth above made the probable cause to hold Kelly questionable, as ultimately confirmed by the dismissal of charges against him.

This is not a case where Plaintiff raised an alibi or excuse that would have required the officer to go outside of the department seeking exculpatory evidence.  It is not a case where the validity of the alibi depended upon the veracity of witnesses who might have an incentive to lie, or was circumstantial and dependent on a series of inferences.  To the contrary, there was objectively verifiable information from official sources that Officer Jones could have consulted with minimal effort: a mug shot of the suspect and criminal records that would have definitively established that the wrong person had been arrested.  As a definitional matter, no "investigation" was required, just verification of a single fact—was Plaintiff incapable of having committed the crime for which he was arrested by virtue of his previous incarceration?  With Kelly safely in

custody, confirmation of that fact would not have interfered with Officer Jones' discharge of his duty or required him to do anything more than check information available to and routinely used by police.

In evaluating issues of probable cause and the duty of an officer to consider potentially exculpatory evidence, the Tenth Circuit has recognized a distinction between "fundamental" evidence, which an officer must consider, and evidence that could be subject to a variety of interpretations.  See Romero v. Fay, 45 F.3d 1472, 1477 (10th Cir. 1995).  The evidence here would certainly be considered fundamental, given that it was objective evidence from an official source which would completely exonerate the suspect.  Other circuits have recognized that in evaluating an officer's assessment of probable cause, courts need to consider not just how the particular officer assessed the case, but how a police officer acting reasonably under the circumstances should have perceived it.  Sevigny v. Dicksey, 846 F.2d 953, 957 (4th Cir. 1988).  Or, as the Seventh Circuit has described the duty, "[a] police officer may not close his or her eyes to facts that would help clarify the circumstances of an arrest."  BeVier v. Hucal, 806 F.2d 123, 128 (7th Cir. 1986) (officer must be held to knowledge of reasonably discoverable information bearing upon probable cause to arrest for child neglect); see also Estevez v. City of Philadelphia, No. 06-3168, 2007 WL 707358 (E.D. Pa. Mar. 2, 2007) (Schiller, J.)

Plaintiff must finally show that the officer acted maliciously or for a purpose other than bringing the plaintiff to justice.  At this preliminary stage in the case, given this constellation of facts, Kelly is at a minimum entitled to discovery on his claims.  There was clearly reason to question whether the correct suspect had been arrested; no legitimate law enforcement purpose would be served by keeping an innocent person in custody; and I am persuaded that failure to consult a readily available trustworthy source of official information could be considered

9

shocking, where the consequence of refusing to take such a simple action resulted in a deprivation of liberty.

Qualified immunity does not bar the malicious prosecution claim against Officer Jones. The Supreme Court has put forth a two-step test for determining whether a government official, such as a police officer, is entitled to qualified immunity when sued under § 1983. See Saucier v. Katz, 533 U.S. 194, 201 (2001); Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007).

> First, a court must decide whether the facts that a plaintiff has alleged make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.

Pearson v. Callahan, 555 U.S. 223, 232 (2009) (citations omitted).[1]

With regard to the first portion of the test, I have already determined that Plaintiff has alleged enough facts to make out a potential violation of a constitutional right at this stage of the litigation, though such a violation will later need to be supported by facts. Next, "[t]he relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202; Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010). As the Third Circuit has stated, "a police officer is not entitled to qualified immunity if 'a reasonably well-trained officer in [Defendant's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant.'" Kelly, 622 F.3d at 255 (quoting Malley v. Briggs, 475 U.S. 335, 345 (1986)).

While this language from Kelly and Malley speaks to whether the act of applying for a warrant, it is equally applicable to the situation before this Court, where qualified immunity hinges on the continued existence of probable cause following arrest, when the question of

---

[1] Pearson clarified that these two requirements need not be determined in that order.

mistaken identity presented itself.  Probable cause ceases to exist when it becomes clear that the wrong person has been taken into custody—a fact that Officer Jones could have readily ascertained.  And the proposition that no citizen can be imprisoned without probable cause would be  self-evident to any officer.

### III.     Monell Claims

Kelly alleges that the City of Chester failed properly to train its officers as to the limits of their authority.  As to specificity, the defense is correct that the Complaint is not impressive in its detail.  Taken in its entirety, however, it adequately states a claim for municipal liability, and certainly provides sufficient notice to the City of what is at issue. Whether Plaintiff can support a claim of lack of training will be determined later in the litigation.  The Motion to Dismiss on that ground will be denied.

However, the scope of the Monell claim  is limited  by the statute of limitations.  "In actions under 42 U.S.C. § 1983, federal courts apply the state's statute of limitations for personal injury," and "Pennsylvania's statute of limitations for personal injury is two years."  Sameric Corp. of Delaware v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998).  The wrongful arrest claim accrued upon Plaintiff's arrest on June 6, 2012, and was not filed until July 18, 2014. Accordingly, any claim under Monell arising out of a failure of training or lack of policy with respect to the initial arrest is barred.  Plaintiff's contentions, if any, must be  limited in focus to policies, procedures, or training relevant to the  malicious prosecution claim as defined by this memorandum.

### IV.     Intentional Infliction of Emotional Distress

There is no constitutional claim for Intentional Infliction of Emotional Distress.  Such a claim can survive only if it is cognizable under state law.  The Third Circuit has predicted that

11

the Pennsylvania Supreme Court will ultimately recognize such a theory. Pavlik v. Lane Limited Tobacco Exporters International[2], 135 F.3d 876 (3d Cir 1998). With that assumption, I am not persuaded that the conduct alleged here will suffice. The Superior Court has accurately summarized the Pennsylvania decisions as follows:

> The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in any civilized society. It has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort.

Reardon v. Allegheny College, 926 A.2d 477, 488 (Pa. Super. Ct. 2007).

Upon my review of the cases, they seem to require conduct deliberately pursued for the specific purpose of causing affront to a specific individual. Although I find the police conduct alleged here deeply troubling and sufficient to rise to the level of a constitutional deprivation, it lacks the personal *animus* Pennsylvania cases appear to require.

**V.     Conclusion**

Count I of the First Amended Complaint for False Arrest and False Imprisonment will be dismissed as to all Defendants, but the claim for Malicious Prosecution under this Count will remain as to Officer Demoss Jones. Count II for Failure to Investigate will be dismissed, but allegations pertinent thereto are deemed incorporated within Plaintiff's claim for Malicious Prosecution. Count III for Malicious Prosecution will be dismissed as to Officers John Gretsky and S. Gretsky, but not as to Officer Demoss Jones. Count IV for Intentional Infliction of Emotional Distress will be dismissed as to all Defendants. Count V for Failure to Train,

---

[2] One is tempted to describe Intentional Infliction of Emotional Distress as a hypothetical tort in Pennsylvania. Although the Supreme Court has made reference to its potential existence, it has yet to find a fact pattern sufficiently egregious to permit recovery of damages.   See Litvin & McHugh, Pennsylvania Torts, Section 11.7 (West/Thompson Reuters, 1996; Supp. 2015).

12

Supervise, and Discipline will be dismissed in part, as it applies to Claims arising out of False Arrest.  Claims arising out of Malicious Prosecution survive.  An appropriate order follows.


     /s/ Gerald Austin McHugh
United States District Court Judge