**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANTHONY J. KELLY,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | **No. 14-4317** |
| **v.** | : | |
| | : | |
| **OFFICER DEMOSS JONES, et al.,** | : | |
| **Defendants.** | : | |

MCHUGH, J.                                                        NOVEMBER 24, 2015

<u>**MEMORANDUM**</u>

     Defendants Officer Demoss Jones and the City of Chester moved for reconsideration of my previous decision denying qualified immunity for Plaintiff Anthony Kelly's unlawful incarceration for a period of approximately five weeks following his arrest on a warrant obtained by Officer Jones.  For the reasons that follow, reconsideration is denied, and my previous order and opinion denying Defendants' Motion to Dismiss the claims against Officer Jones and City of Chester will be reinstated.[1]

**I.**     **Defendants' arguments in support of their Motion to Dismiss and Motion for Reconsideration fail to address those facts which are critical to whether qualified immunity is warranted.**

     Plaintiff was taken into custody as a result of a warrant issued in reliance upon representations made by Defendant.  As set forth in my opinion of April 17, 2015, although that warrant was legally sufficient, it contained no physical description of the suspect.  Neither "Anthony" nor "Kelly" is a unique or unusual name.  The warrant in question was not executed

---

[1] The Motion for Reconsideration was filed as the Court was in final pretrial preparation for a lengthy out-of-district criminal case.  In response to Defendant's Motion for an extension of time to file an interlocutory appeal, I vacated the Order so that the parties and the Court would have time to give appropriate consideration to Officer Jones' position.  Defendants' Motion for Reconsideration was therefore denied as moot, but this opinion responds to the arguments made by the Defendants in support of that Motion.

close in time to the offense; more than five years had elapsed.  The target of the warrant was known to use a nickname which Plaintiff disavowed.  Most importantly, the police were in possession of a mug shot of the actual perpetrator of the offense, and Plaintiff has pleaded that he advised Officer Jones that the wrong Anthony Kelly had been arrested.  Finally, without leaving the police station, either by comparing the mug shot or confirming with  a records check that Plaintiff was incapable of having committed the offense because he was incarcerated, Officer Jones could have ascertained that his warrant brought about an erroneous arrest.[2]

Defendants' Motion analyzes this case as if Officer Jones was in the same position as the sheriff in Baker v. McCollan, 443 U.S. 137 (1979), acting in reliance on information from law enforcement and judicial officers from outside his jurisdiction.  In fact, he was personally involved in the sequence of events that brought Kelly into custody and held him for more than a month.  This combination of facts, where the Defendant both requested the warrant triggering the arrest, and was then uniquely positioned to determine if probable cause existed to **hold** the individual arrested pursuant to his warrant, led me to conclude that "a reasonably well-trained officer in Defendant's position" would know that detention was  unlawful.  Kelly v. Borough of Carlisle, 622 F.3d 248, 255 (3d Cir. 2010) (quoting Malley v. Briggs, 475 U.S.  335, 345 (1986)).

---

[2] In light of the exigent circumstances facing the arresting officers in the field, I found that they acted reasonably in arresting Plaintiff despite these now-apparent problems.  An arresting officer must have probable cause—determined by an objective inquiry into the facts and circumstances within the officer's knowledge—to believe that the person he is arresting has committed a crime.  United States v. Cruz, 910 F.2d 1072, 1076 (3d Cir. 1990).  While "[a]n apparently valid warrant does not render an officer immune from suit if his reliance on it is unreasonable in light of the relevant circumstances," Berg v. Cnty. of Allegheny, 219 F.3d 261, 273 (3d Cir. 2000), "when the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest."  Hill v. California, 401 U.S. 645, 802 (citing California v. Hill, 446 P.2d 521, 523 (1968)).  For this reason, my prior decision was not vacated as it pertains to the arresting officers, and my Order dismissing Plaintiff's claims against them stands.  However, law enforcement officers have additional time and resources to verify a person's identity once that person has been detained.  My analysis of the lawfulness of Officer Jones' conduct, therefore, depends on the reasonableness of his conduct in light of his different role and those different circumstances.

Accordingly, Plaintiff has pleaded facts that, if true, sufficiently state a claim under 42 U.S.C. § 1983, and Officer Jones is not entitled to qualified immunity for his actions.

**II.    The initial issuance of a warrant does not relieve Officer Jones of liability for malicious prosecution.**

Defendants assume that an initial determination by a judicial officer that there was probable cause to issue a warrant immunizes police from any further responsibility downstream. The Third Circuit specifically rejected the theory that probable cause to make an arrest necessarily immunizes an officer from liability for malicious prosecution in Johnson v. Knorr, 477 F.3d 75, 79 (3d Cir. 2007).  It held that where an officer's involvement does not end with the issuance of a warrant or the act of arrest, a claim for malicious prosecution may exist.  Id.  As set forth in my earlier opinion, the warrant issued justifies seizing **an** Anthony Kelly; it does not follow that it allows prolonged detention of the wrong Anthony Kelly.  In Johnson, the defendant officer affirmatively inserted himself into the post-arrest process by lodging additional phony charges against a suspect with whom he had a confrontation at the station.  Here, the Complaint alleges that Officer Jones' post-arrest involvement stemmed from Plaintiff protesting to him that the wrong person had been arrested, but that is a distinction without a difference given that Plaintiff's detention stemmed directly from Officer Jones' warrant.  Who would be better qualified and better situated to resolve the issue quickly and definitively other than the very officer whose affidavit of probable cause triggered the arrest?

In that regard, the cases discussed in the Court's earlier decision,[3] which Defendants seek to distinguish, were not cited as the basis for denying qualified immunity, but rather for their

---

[3] Walker v. Spiller, No. 97-6720, 1998 WL 306540 (E.D. Pa. June 9, 1998); Romero v. Fay, 45 F.3d 1472, 1477 (10th Cir. 1995); Sevigny v. Dicksey, 846 F.2d 953, 957 (4th Cir. 1988); BeVier v. Hucal, 806 F.2d 123, 128 (7th Cir. 1986).

discussion of what a reasonable officer must consider in assessing the continuing validity of an earlier finding of probable cause.

### III.   The right in question was clearly established, such that qualified immunity is unwarranted.

Defendants argue that Officer Jones is entitled to qualified immunity because the constitutional right allegedly violated was not clearly established at the time Officer Jones acted. To overcome a qualified immunity defense, it must be clear at the time of the officer's conduct that a "reasonable official" would understand his actions violate a particular constitutional right. Anderson v. Creighton, 483 U.S. 635, 640 (1987).  "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Id.  Because determinations of qualified immunity in the Fourth Amendment context require an analysis of the objective reasonableness of an officer's actions in light of a particular set of facts, the Third Circuit has held that officers must "know and apply general legal principles in appropriate factual situations.  Although officials need not predict the future course of constitutional law, they are required to relate established law to analogous factual settings." People of Three Mile Island v. Nuclear Regulatory Comm'rs, 747 F.2d 139, 144 (3d Cir. 1984) (internal citations omitted).  The qualified immunity doctrine does not permit officials "one liability-free violation of a constitutional or statutory requirement" simply because the same set of facts has not yet presented itself for review.  Id. at 145.

In my initial opinion, I noted that "the proposition that no citizen can be imprisoned without probable cause would be self-evident to any officer."  See United States v. Lanier, 520 U.S. 259 (1997) (holding that an official's conduct may be so obviously unconstitutional that he is not immune even when there is no case law on point, since "[t]he easiest cases don't even

3

arise.  There has never been ... a section 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune from damages liability.").  Nonetheless, I am mindful of the Supreme Court's caution against defining the relevant legal rule with too great a level of generality.  <u>Anderson</u>, 483 U.S. at 639. Because the defense disputes that Officer Jones should have realized the illegality of detaining Kelly under these circumstances, a more in-depth review of the relevant case law is warranted.

In <u>Baker v. McCollan</u>, which I discussed in my original opinion, the Supreme Court considered the case of a plaintiff arrested pursuant to a facially valid warrant issued outside their jurisdiction and detained for three days over a New Year's weekend, then released after officials compared the plaintiff's appearance to a file photograph of the wanted man and realized their error.  443 U.S. at 137.  The Court held that  such conduct did not rise to the level of a deprivation of constitutional rights,   <u>Id.</u> at 146, but  acknowledged that detention based on a misidentification could give rise to a § 1983 claim under more compelling circumstances:

> Obviously one in [the plaintiff's] position could not be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment. … We may even assume, *arguendo*, that, depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of "liberty without due process of law."

<u>Id.</u> at 144–145.

One of the earliest pertinent decisions to consider how long a period of mistaken incarceration must be, or what sorts of procedures must be denied an arrestee to establish a constitutional violation, was issued more than thirty years ago by a highly regarded member of this Court, Judge Louis Pollack.  <u>Rodriguez v. Roth</u>, 516 F.Supp. 410 (1981).  In <u>Rodriguez</u>, a driver was stopped and taken into custody based on an outstanding warrant in his name.  <u>Id.</u>  at

4

411.  He was released after only a few hours, however, once officers compared him with photographs and physical descriptions of the "Justino Rodriguez" named in the warrant.  Id.  The plaintiff was then mistakenly arrested again several months later on the same warrant.  In the second instance, because the officers did not perform the same comparison, he was detained for a full month and released only pursuant to a writ of habeas corpus.  Id.  Judge Pollack found that the length of the plaintiff's 30-day detention, in conjunction with the plaintiff's repeated claims of mistaken identity and the fact that the officers had the ability to easily discover the error in identification, "present[ed] quite a different picture to that of Baker."  Id. at 412.  The defendant's motion to dismiss was therefore denied.  Id.

Although Rodriguez is only a district court opinion, it formed part of the basis of the Sixth Circuit's decision in Gray v. Cuyahoga County Sheriff's Department, 150 F.3d 579 (6th Cir. 1998).  There, the court considered the case of a plaintiff who was arrested based on a warrant issued in his name but meant for his brother, and then detained for 41 days even though he repeatedly asserted his innocence and the officers allegedly failed to consult a photograph of the suspect in their possession that bore little resemblance to the plaintiff.  Id. at 582–83.  The Court held that absent sufficient proof that the officers conducted a reasonable inquiry into the discrepancy in the photograph, a trier of fact could find that the officer's "failure … to ascertain that they were holding the wrong person" violated the plaintiff's constitutional rights.  Id. at 583.

The Seventh Circuit considered an even shorter detention based on mistaken identity—a seven-day period—to present a possible constitutional violation in Patton v. Przyblski, 822 F.2d 697 (7th Cir. 1987).  There, plaintiff had been arrested when a routine warrant check at a traffic stop revealed an outstanding warrant for a suspect with the same name as the plaintiff, but a driver's license issued by a different state.  Id. at 698.  The Court held that the arrest based on

5

that warrant was itself reasonable,[4] but found it unacceptable that "[a]n innocent person was allowed to languish in jail for almost a week."  Id. at 700.  The Court further advised:

> [T]o arrest a person over his vigorous protest that he is the wrong man—a protest given some credibility in this case by the driver's license—and keep him in jail for this period without either investigating the case or bringing him before a magistrate raises serious constitutional questions. …  Baker v. McCollan is not to the contrary.

Id. at 700–01.[5]

In Lee v. City of Los Angeles, 250 F.3d 668, 683–84 (9th Cir. 2001), the Ninth Circuit held that a plaintiff stated a claim for relief under § 1983 when the mentally incapacitated plaintiff was misidentified as a fugitive who shared the plaintiff's last name, and officers extradited and then incarcerated the plaintiff without taking steps like checking the fingerprints and physical characteristics that were in their possession to verify that the correct individual was in custody.

Finally, in Cannon v. Macon County, 1 F.3d 1558 (11th Cir.1993), the court held that the arrest of a suspect whose name matched a warrant did not support liability, notwithstanding apparent inconsistencies in her appearance and biographic data, but the failure by an official in the police station to investigate the discrepancies during seven days of incarceration amounted to a constitutional violation.

---

[4] The Seventh Circuit considered the reasonableness of the arresting officer's actions in light of the practical difficulties facing officers executing warrants in the field:

> If an officer executing an arrest warrant must do so at peril of damage liability under section 1983 if there is any discrepancy between the description in the warrant and the appearance of the person to be arrested, many a criminal will slip away while the officer anxiously compares the description in the warrant with the appearance of the person named in it and radios back any discrepancies to his headquarters for instructions.

Patton, 822 F.2d at 699 (citing Johnson v. Miller, 680 F.2d 39, 41 (7th Cir. 1982)).  As discussed in footnote two, supra, these exigencies present in the field excuse the reasonable but mistaken arrest conducted by Officers John and S. Gretsky, but they were not present during the month that Plaintiff was detained by Officer Jones.

[5] The Court ultimately found that the claim failed only because the plaintiff had not demonstrated that the sheriff named as a defendant in the case knew anything about the delay in investigating, and he therefore could not be held liable.  Patton, 822 F.2d at 701.

To summarize, as of the time of Kelly's arrest, four circuits, in decisions dating back to 1987, had validated Judge's Pollack's earlier interpretation of the Constitution,[6] and the defense has cited no circuit precedent to the contrary. Most significantly, all of these cases explicitly address Baker v. McCollan and reject the very argument advanced by Defendants here. Within the Third Circuit, decisions from other circuits are pertinent in resolving issues of qualified immunity. See, e.g., Kopec v. Tate, 361 F.3d 772, 778 (3d Cir. 2004) ("In reaching our result [denying a qualified immunity defense] we point out that other courts of appeals have made determinations consistent with ours."). At a minimum, they are relevant in determining what a reasonably trained police officer should know, and whether there is truly ambiguity as to the meaning of Baker.

In this case, the length of Plaintiff's incarceration—30 days—was ten times as long as that of the plaintiff in Baker. This is also the same length of time that Judge Pollack found constitutionally problematic in Rodriguez, and four times as long as the period the Seventh and Eleventh Circuits found problematic in Patton and Cannon. In addition, as in Rodriguez, Gray, Cannon, and Lee, Officer Jones had the ability to easily discover the error in identification by consulting information accessible to him like photographs and descriptions of the actual subject of the arrest warrant.

The defense contends that the controlling law had to have been unclear to Officer Jones, seizing upon this sentence in my earlier opinion: "For practical purposes, the question is how far to extend the protections of Baker." However, this confuses syntax with substance. Making such an inquiry does not indicate that the question remained unanswered, and therefore the scope of Plaintiff's right was not "clearly established" at the time. Rather, the Court must engage in

---

[6] Courts have conceptualized the violation in different ways—differing mainly on whether the violation should be characterized as one of the Fourth amendment or the Fourteenth amendment—but they have uniformly found that such detention was unlawful.

such an analysis to determine whether a reasonably well-trained officer "apply[ing] general legal principles" and "relat[ing] established law to analogous factual settings" would know that his conduct was prohibited.  People of Three Mile Island, 747 F.2d at 144.  By my reading of the Constitution, the right of an innocent citizen to be free from unlawful seizure is patent.  Baker is a narrow defense for officers who initially arrest and detain a person in reliance upon a facially valid warrant.  However, as set forth in the original opinion, one cannot compare the situation faced by out-of-county officers acting in reliance on an apparently valid warrant in Baker (who **did** in fact later investigate) with the conduct of Officer Jones, whose affidavit of probable cause instigated Kelly's arrest, who was according to the complaint told of the mistaken arrest, and had at his immediate disposal the means to determine the legitimacy of the arrest.  Officer Jones should have therefore recognized that his actions were not excused by Baker.

### IV.    Plaintiff has stated a viable claim against the City of Chester.

My original order indicated that Plaintiff sufficiently stated a § 1983 Monell claim against the City of Chester for failure to properly train and supervise officers, at least pertaining to policies and customs relevant to the malicious prosecution claim.  Defendants argued that since Plaintiff's Monell claim is predicated on the City of Chester's alleged unconstitutional policy in failing to train, supervise, or discipline Officer Jones, the Monell claim should be dismissed if the claims against Officer Jones were dismissed.  Since the claim against Officer Jones will be permitted to proceed, the claim against the City of Chester will accordingly be permitted.  Therefore, my original order as to the City of Chester Defendant is reinstated.

          /s/ Gerald Austin McHugh
United States District Court Judge